**AMTRECO, INC., et al., Plaintiffs,**

v.

**O.H. MATERIALS, INC., et al., Defendants.**

**Civ. A. No. 90–65–VAL (WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Oct. 13, 1992.

Berrien L. Sutton, Homerville, Ga., for plaintiffs.

Frank L. Butler, III, Macon, Ga., Daniel S. Reinhardt, Atlanta, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is defendant O.H. Materials, Inc.'s motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

This case is one of several cases before this court which are related to a CERCLA cleanup operation that occurred upon the property of plaintiffs, Amtreco, Inc. ("Amtreco") and Dickerson, from July, 1987, to March, 1988. The cleanup was conducted by employees of the Environmental Protection Agency ("EPA") and defendant O.H. Materials, Inc. ("OHM"), a private contractor.

After the cleanup was completed, the United States filed suit in this court to recover the costs of the cleanup from Amtreco and Dickerson. *See United States v.*

*Amtreco, Inc.*, 90–31–VAL(WDO) ("CERC-LA recovery action"). Subsequently, Amtreco and Dickerson filed this suit against OHM and certain EPA employees.

In this case, plaintiffs allege that OHM and certain EPA employees committed various tortious acts and caused much property damage during the cleanup operation. Plaintiffs have specifically made state tort claims for conversion, property damage, and false swearing, and federal claims for violations of RICO, equal protection, and due process.

The court has previously dismissed all claims against the EPA agents. *See* Orders of March 12, 1992, and October 13, 1992. OHM now seeks a dismissal of all claims or, alternatively, summary judgment, in this case. In its motion, OHM contends that it is protected from plaintiffs' state and common law tort claims by the government contractor defense and that plaintiffs' federal RICO, equal protection, and due process claims are insufficient. OHM also contends that the court has no personal jurisdiction over it because plaintiffs failed to comply with service of process requirements.

## DISCUSSION

### 1. Service of Process

■ The first issue that must be addressed by the court is OHM's claim that the court lacks personal jurisdiction over OHM because of plaintiffs' failure to comply with service of process requirements. It is undisputed that plaintiffs served the wrong registered agent for service of process and have not corrected that mistake. However, on June 10, 1992, OHM acknowledged service at the request of the court. In addition, OHM has participated in discovery in this case. Thus, OHM has submitted to the jurisdiction of the court, and service of process is no longer an issue.

### 2. Government Contractor Defense

■ Second, OHM contends that it satisfies the elements of the government contractor defense and therefore, plaintiffs' state and common law tort claims against it

are barred. The government contractor defense is a defense that shields government contractors from liability under state law for design defects in products that they have manufactured for the United States. It was adopted by the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

■ A government contractor is protected by this defense if it can show the following:

(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* at 512, 108 S.Ct. at 2518. OHM contends that this defense applies not only to products manufactured for the government but also to services provided to the government, and, therefore, it bars plaintiffs' state tort claims in this case.

The court has found no authority to support OHM's position. Furthermore, there is no comparison between a claim based upon a design defect in a product and a claim based upon intentional misconduct. Thus, OHM's argument is unpersuasive, and the government contractors defense is inapplicable to this case.

### 3. Government Agency Defense

Third, although the government contractors defense does not apply to the facts of this case, another defense, the government agency defense, does apply to government performance contracts. This defense, though rarely used, grows out of the decision of *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940).

In *Yearsley*, a contractor built dikes upon the Missouri River pursuant to a government contract, and the process used to construct the dikes caused great erosion of petitioners' land. All work done by the contractor was authorized and supervised by the United States, and this work was

performed pursuant to an Act of Congress. *Id.* at 20, 60 S.Ct. at 414.

The Court held that when a contractor acts as an agent for the United States and has valid congressional authority, then the contractor is not liable for executing that authority. *Id.* at 20–21, 60 S.Ct. at 414 ("[I]t is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will.").

Moreover, the Court noted that an agent acting on behalf of the United States is only liable for his conduct when "he exceeded his authority or [the authority] was not validly conferred." *Id.* at 21, 60 S.Ct. at 414. Therefore, the contractor was not liable to petitioners.

The Eleventh Circuit provided some guidance on this defense in *Shaw v. Grumman Aerospace Corp.*, 778 F.2d 736 (11th Cir. 1985), *cert. den.*, 487 U.S. 1233, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). Unfortunately, *Shaw* involved a manufacturing defect, and the court declined to apply the government agency defense to the facts of the case.

Nevertheless, in *Shaw*, the Eleventh Circuit stated that a court should make the following three-step inquiry in determining whether the government agency defense is satisfied:

First, [the court] would ... determine whether the government itself could be sued in that situation. If not, the court would then invoke a second body of doctrine, the law of principal and agent, to inquire whether the contractor actually acted as an agent of the government. Precedent in the Court makes it clear that, at least in manufacturing defect cases arising in a military setting, a firm must be more than simply an independent contractor to be regarded as the government's agent.... Finally, if the contractor proved agency status, the court would inquire whether the agent

acted within the course and scope of its duties.

*Id.* at 740 (citations omitted).

■ Federal law indicates that OHM cannot meet the second element of the defense; under CERCLA, OHM is treated as an independent contractor rather than an agent of the United States. To arrive at this conclusion, one needs only to look at 42 U.S.C. § 9619(c), which states as follows:

The President may agree to hold harmless and indemnify any response action contractor meeting the requirements of this subsection against any liability (including the expenses of litigation or settlement) for negligence arising out of the contractor's performance in carrying out response action activities under this subchapter, unless such liability was caused by conduct of the contractor which was grossly negligent or which constituted intentional misconduct.

■ That the government, at its option, may indemnify a response action contractor against any liability for negligence arising out of the performance of the cleanup contract indicates that the relationship between the United States and OHM is not one of principal/agent. Under Georgia law, in a true principal/agent relationship, the principal is automatically liable for the negligence of an agent acting within the scope of the agency. O.C.G.A. § 51–2–2. CERCLA, in contrast, contemplates that a response action contractor will be independently liable for negligence or other tortious behavior and that the United States may assume the liability in certain circumstances.

Furthermore, in this case, the contract between OHM and the EPA indicates that the relationship is not one of principal/agent. Under the contract, OHM is responsible for obtaining general liability insurance for injuries to third persons and their property in the amount of $1,000,000.00 per occurrence. Contract, Section H.30(c)(2). Moreover, the contract provides that the government will indemnify OHM against any liability arising from negligence so long as the liability is not compensated by insurance or otherwise and results

only from a release of hazardous substances. Contract, Section H.30(g)(1).

Thus, OHM cannot show that it was acting as an agent of the United States when it performed the contract. Therefore, the government agency defense is inapplicable in this case, and OHM's motion for summary judgment on plaintiffs' state and common law tort claims must be denied.

### 4. RICO Claims

Fourth, by its order of March 12, 1992, this court held that plaintiffs' RICO claims against the federal defendants failed to state a claim. The RICO claim against OHM is identical and therefore, insufficient. Hence, summary judgment on plaintiffs' RICO claim is granted.

### 5. *Bivens* Claims

■ Finally, plaintiffs have alleged through a *Bivens* claim that OHM conspired to and did violate their rights to equal protection and due process. A *Bivens* claim can only be maintained against federal officials. *Hawthorne v. Wells*, 761 F.2d 1514 (11th Cir.1985). This claim cannot be maintained against OHM, a private contractor. Therefore, summary judgment on plaintiffs' equal protection and due process claims is granted.

### ·CONCLUSION

In summary, defendant O.H. Materials, Inc.'s motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED on plaintiffs' *Bivens* claims and RICO claims. Summary judgment is DENIED on plaintiffs' state and common law tort claims.

SO ORDERED.