

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF WASHINGTON, | No.    17-35641 |
| Plaintiff-Appellee, | D.C. No. 2:17-cv-00053-RSL |
| v. | |
| MONSANTO COMPANY; PHARMACIA CORPORATION; SOLUTIA, INC., | MEMORANDUM[*] |
| Defendants-Appellants, | |
| and | |
| DOES, 1-100, | |
| Defendant. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted August 29, 2018[**]
Seattle, Washington

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       We grant the Motion To Take Judicial Notice, filed February 20, 2018 (Dkt. # 27).

Before: HAWKINS, McKEOWN, and W. FLETCHER, Circuit Judges.

Defendants Monsanto Company, Pharmacia Corporation, and Solutia, Inc. (collectively "Monsanto") appeal the district court's order remanding the case to state court. Monsanto argues that it manufactured polychlorinated biphenyls ("PCBs") under federal direction, and their action was therefore properly removed to federal court on the basis of federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1447(d), and we affirm the district court.

We review the district court's remand order de novo. *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 727 (9th Cir. 2015). Section 1442(a)(1) provides that "[a] civil action or criminal prosecution" initiated in state court "that is against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to federal district court. 28 U.S.C. § 1442(a)(1). A private entity seeking removal under 28 U.S.C. § 1442(a)(1) must demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)

2

(citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 124–25 (1989)).

The second element, known as the "causal nexus" requirement, is dispositive here. In order to meet the "causal nexus" requirement, the removing party must show that it "act[ed] under" federal authority within the meaning of 28 U.S.C. § 1442(a)(1), and that its actions under federal authority are sufficiently related to plaintiff's claims. *See Goncalves ex rel. Goncalves v. Rady's Children's Hosp. San Diego*, 865 F.3d 1237, 1244–45 (9th Cir. 2017) (separating "acting under" and "causal connection" requirements). A private person acts "under" a federal officer within the meaning of the statute where that person takes "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," a relationship that "typically involves 'subjection, guidance, or control'" by the federal officer. *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 151–52 (2007) (citation omitted) (emphasis in original). Compliance with federal law is not sufficient. *Id.* at 153.

Monsanto argues that it acted under federal authority, because the federal government sponsored, required, and compelled the production of PCBs before, during, and after World War II. We disagree. In support of removal, Monsanto attached invoices for sales of PCB products to the federal government and

3

contractors, as well as government specifications for defense products such as heat-resistant aluminum paint that recommend the use of PCBs. However, this evidence shows only that the federal government purchased off-the-shelf PCB products from Monsanto and recommended the use of PCBs as a component in defense specifications. It does not show that the federal government supervised Monsanto's manufacture of PCBs or directed Monsanto to produce PCBs in a particular manner, so as to come within the meaning of "act[ed] under." 28 U.S.C. § 1442(a)(1).

Monsanto also submitted necessity certificates and applications for necessity certificates, arguing that these documents demonstrate that the federal government "financed expansions of [its] facilities so that it could expand production of PCBs for the military and its defense contractors." These documents show that Monsanto received tax incentives for producing PCBs, but again, do not show that the government supervised or controlled Monsanto's manufacture of PCBs.

Finally, Monsanto submitted two letters that document instances in which the federal government ordered Monsanto to accept a third party's purchase orders for PCBs, invoking Section 101 of the Defense Production Act, Pub. L. No. 81-774, 64 Stat. 798, 799 (1950); Monsanto's response to a letter noting "the increasing environmental concerns expressed about products containing [PCBs]"

4

but ultimate acceptance of the purchase order; and correspondence discussing Monsanto's fulfillment of a purchase order from a defense contractor. These letters show that Monsanto was required to comply with Section 101 of the Defense Production Act. However, compliance with federal law is not sufficient to establish that Monsanto "act[ed] under" federal authority. *Watson*, 551 U.S. at 153 (citation omitted). The letters do not show ongoing federal supervision in the manufacture or production of PCBs.

**AFFIRMED.**